IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SUZANNE SAVEDRA YOUNGBLOOD,

    Petitioner,                    No. CIV S-02-2387 ALA HC

    vs.

PLACER COUNTY PROBATION DEPT., et al.,

    Respondents.                ORDER

_____/

        Petitioner is proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. In 1999, petitioner was convicted in the Superior Court of Placer County for cruelty to animals. She was sentenced to 92 days in county jail and five years of probation.

**I**

        On direct appeal, the California Court of Appeal summarized the facts underlying petitioner's conviction and sentence as follows:

> On December 31, 1998, Officer Robert Carter of Placer County Animal Control responded to a complaint that an excessive number of cats were being kept under poor health and living conditions in a small trailer. Officer Carter went to the property and saw a residence with a small trailer near the garage. He smelled a strong odor of ammonia which he associated with animal urine, when he left his truck and started toward the residence.
>
> Terrance Deveany, the owner of the property, responded when

Officer Carter knocked on the door.  Deveany told Officer Carter the trailer belonged to the defendant.

Officer Carter approached the trailer and looked inside through the windows.  He saw at least 35 cats in the trailer.  At various places in the trailer, he saw fecal matter and urine.  Many of the cats were sneezing and had eye discharge.  Officer Carter telephoned the on call magistrate and obtained a search warrant for the trailer.  The officer then called for a tow truck.  As they were hooking the trailer to the tow truck, the defendant arrived at the property.  She stated she was taking care of the cats and believed there were between 80 and 90 in the trailer.  She tried to give Officer Carter a vial with medicined for the cats, but he would not accept it because it was not adequately marked.  The trailer was towed to the DeWitt Center so it could be placed in the building before being opened to prevent loss of control of the cats.

When the trailer was first opened at the DeWitt Center, Officer Carter entered with a video camera and recorded the conditions inside the trailer.  The videotape was played for the jury.

The cats, 92 in all, were removed from the trailer and assigned numbers for identification.  Most of the cats appeared unhealthy.  They were examined and treated by a veterinarian.  Her initial summary of the condition of the cats is as follows: "Most of the cats were covered in urine and feces.  There [were] many that were malnourished, emaciated.  Cats were sick with upper respiratory, herpes virus.  They had ear mites, fleas.  There were cats with neurologic[al] problems.  There [were] cats that were missing portions of their limbs or had deformed limbs.  There [were] cats with urine scald, and there [were] cats that were either blind or partially blind in one or both eyes and cats that were missing eyes, too."  The  veterinarian also described other ailments suffered by the cats.  Many of the problems described by the veterinarian, such as dehydration, chronic malnourishment, anorexia, urine scald, and severe infection, occur as a result of inadequate care over a long period.

The defendant testified.  She lived in Sacramento County.  In October 1988, she put the cats, about 35 to 40 at the time, in the trailer and moved them to the Deveany property in Placer County because Sacramento Animal Control officials told her she could not have more than four cats.  She lived with the cats at first, either in the trailer or in a tent next to the trailer, feeding the cats and cleaning up after them.  She brought additional stray cats from the Sacramento County neighborhood to the trailer.  Eventually, she moved back to Sacramento County and visited the trailer to care for the cats.  During the last two weeks before animal control seized the trailer, the defendant was sick and did not visit the cats as often.  She contended that the messy conditions in the trailer were a result of the removal of the trailer to the DeWitt Center.

> She knew she had too many cats, but she asserted she was trying to save their lives.

Answer, Ex. D at 2-4.

Petitioner's conviction and sentence were upheld on appeal. *Id.* at 31. Petitioner sought review of the California Court of Appeal decision in the California Supreme Court. Answer, Ex. G. Petitioner's request for review was denied without comment. Answer, Ex. H.

## II

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal court may grant an application for a writ of habeas corpus if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

3

Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

A federal court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal court must independently review the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). As the last reasoned state court opinion in this matter, this court will review the decision of the California Court of Appeal.

### III

Petitioner alleges three claims concerning jury instructions. Petitioner contends the trial court erred by refusing to instruct the jury on the defense of necessity resulting in a violation of petitioner's constitutional rights. Petitioner also argues that the trial court erred in instructing the jury on the elements of Penal Code § 597(b). Petitioner further asserts that the trial court erred when it failed to instruct the jury on an intervening superceding cause.

### A

A challenge to jury instructions does not generally state a federal constitutional claim. *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. *Middleton*, 768 F.2d at 1085; *see also Lincoln v. Sunn*, 807 F.2d 805, 814 (9th Cir. 1987); *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." *Hines v. Enomoto*, 658 F.2d 667, 672 (9th Cir.

1981) (citing *Quigg v. Crist*, 616 F.2d 1107 (9th Cir. 1980)); *See also Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988) (To prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.")  The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome.  *See Thomas v. Hubbard*, 273 F.3d 1164, 1179 (9th Cir. 2001), overruled on other grounds by *Payton v. Woodford*, 299 F.3d 815, 828 n.11 (9th Cir. 2002).

At trial, petitioner claimed that she was keeping the cats to avoid euthanasia.  She requested the jury be instructed on the defense of necessity.  Petitioner claims that the trial court's refusal to instruct the jury on the defense of necessity violated her federal constitutional rights.  The California Court of Appeal rejected this argument.  It held that the defense of necessity was not available to petitioner under the facts of the case.  Answer, Ex. D at 16-19.

In support of its conclusion the California Court of Appeal stated that

> [n]ecessity is an affirmative public policy defense, in effect a plea in avoidance and justification, which comes into focus only after all elements of the offense have been established.  When public policy considerations do not support a defense of necessity, the trial court need not instruct on that defense.
> Since the defense of necessity is based on public policy, we must look to public policy to determine whether the defense was available to the defendant on the facts presented here.  Aside from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state.
> The duties of a facility that acts as a depositary of living animals are spelled out in the Civil Code.  "A depositary of living animals shall provide the animals with necessary and prompt veterinary care, nutrition, and shelter, and treat them kindly."  The Legislature has expressly stated the public policy of this state concerning euthanasia of animals.  If an animal is adoptable or, with reasonable efforts, could become adoptable, it should not be euthanized.  However, if an animal is abandoned and a new owner cannot be found, the facility shall thereafter humanely destroy the animal so abandoned. Particularly relevant to this case and the defendant's assertions is a finding made by the Legislature in 1998: "The Legislature finds and declares that it is better to have public and private shelters pick up or take in animals than private

citizens."

Answer, Ex. D at 17-18 (citations omitted). The California Court of Appeal held that keeping the cats to prevent them from potentially being euthanized was contrary to public policy. *Id.* at 19. The California Court of Appeal concluded, therefore, that the trial court acted properly in denying petitioner's request for an instruction on the defense of necessity. *Id*

Because the omission of an instruction is less likely to be prejudicial than a misstatement of the law, a habeas petitioner whose claim involves a failure to give a particular instruction bears an especially heavy burden. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Petitioner has not overcome that burden. The defense of necessity is available when supported by public policy. *See U.S. v. Schoon*, 971 F.2d 193, 197 (9th Cir. 1991) ("Necessity is, essentially, a utilitarian defense. It therefore justifies criminal acts taken to avert greater harm, maximizing social welfare by allowing a crime to be committed where the social benefits of the crime outweigh the social costs of failing to commit the crime."). Here, public policy requires that stray animals be placed in shelters. Petitioner's keeping the cats to prevent them from potentially being euthanized was contrary to that public policy. Since petitioner's actions contradicted public policy, petitioner was not entitled to have the jury instructed on the defense of necessity.

Therefore, the refusal by the trial court to instruct the jury on the defense of necessity was not a violation of federal law, was not an unreasonable application of law to facts and did not render petitioner's trial fundamentally unfair.

**B**

Petitioner also maintains that the trial court erred in instructing the jury on the elements of Penal Code § 597(b). The trial court instructed the jury that "Penal Code § 597(b) imposes criminal liability if there is proof of three elements as opposed to four." Petition at 5.

California Penal Code § 597(b) reads as follows:

> Except as otherwise provided in subdivision (a) or (c), every person who overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, drink, or shelter, cruelly beats, mutilates, or cruelly kills any animal, or causes or procures any animal to be so overdriven, overloaded, driven when overloaded, overworked, tortured, tormented, deprived of necessary sustenance, drink, shelter, or to be cruelly beaten, mutilated, or cruelly killed; *and whoever*, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather, or who drives, rides, or otherwise uses the animal when unfit for labor, is, for every such offense, guilty of a crime punishable as a misdemeanor or as a felony or alternatively punishable as a misdemeanor or a felony and by a fine of not more than twenty thousand dollars ($20,000).

Cal. Penal Code § 597(b) (emphasis added).

The trial court instructed the jury that

> [e]very person who causes an animal to be deprived of necessary sustenance, drink or shelter <u>or</u> who having care or custody of an animal subjects the animal to needless suffering or fails to provide the animal with proper food, drink [or] shelter in a criminally negligent manner is guilty of cruelty to an animal.

Answer, Ex. D at 5 (emphasis added).

The trial court also instructed the jury that

> [i]n order to prove such a crime each of the following elements must be proved: One, that a person has custody or is responsible for providing care to an animal; two, that person either (a) deprived or caused an animal to be deprived of necessary sustenance, drink or shelter, *or* (b) subjected an animal to needless suffering in a criminally negligent manner, and (c) that act or omission caused danger to an animal's life.

*Id.* (emphasis added).

Petitioner alleges that the use of the disjunctive "or" instead of the conjunctive "and" allowed the jury to find petitioner guilty based solely on the element of subjecting the cats to needless suffering, whereas the statute requires the subjecting of needless suffering in addition to the deprivation of sustenance, drink, or shelter. The California Court of Appeal rejected

petitioner's argument and held that the trial court interpreted the statute correctly. Answer, Ex. D at 5-8.

The state court's rejection of the petitioner's claim is not contrary to or an unreasonable application of federal law. Petitioner was not convicted of violating a federal statute. Petitioner was convicted of violating a state statute. The California Court of Appeal concluded that petitioner was correctly convicted under that state statute. The state court's conclusion in this regard may not be set aside in this federal habeas corpus proceeding. *See Estelle*, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law); *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal court must defer to the state court's construction of its own penal code unless its interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation"). The interpretation of the California statute by the California Court of Appeal is not untenable and does not amount to a subterfuge. Therefore, this claim does not support habeas corpus relief.

**C**

Petitioner claims that the trial court erred when it failed to instruct the jury on intervening superceding cause. Petition at 6. Petitioner argued to the California Court of Appeal that conduct of Placer County Animal Control employees in moving the trailer with the cats inside was an independent superseding cause of their injury. The California Court of Appeal held that the trial court did not err by refusing to give an instruction on intervening superceding cause. Answer, Ex. D at 21-24.

The trial court's decision to deny the petitioner's request that the jury be instructed on intervening superceding cause was not contrary to a clearly established federal law nor was it an unreasonably application of law to facts, or rendered the trial fundamentally unfair. While the transportation of the trailer with the cats inside may have contributed to the filthiness

1  of the trailer, the transportation could not have possibly caused the cats to suffer from herpes,
2  eye and respiratory infections, urine scald, or malnourishment.

## IV

### A

Petitioner asserts that the trial court violated due process by refusing to allow her to present evidence that at least some of the cats found in petitioner's trailer would have been euthanized by Placer County Animal Control had petitioner not taken custody of those cats. Petitioner argued to the California Court of Appeal that this evidence was necessary both to her defense and for effective cross examination of an animal control officer. The California Court of Appeal rejected both claims. Answer, Ex. E at 19-21.

Petitioner's claim that evidence of euthanasia was necessary to her defense is based, in part, on the claim that she was entitled to have the jury instructed on the defense of necessity. The trial court ruled that evidence of euthanasia was not relevant to the issues in the case. Answer, Ex. D at 19. The California Court of Appeal found that prohibiting evidence of euthanasia did not violate petitioner's right to a fair trial because petitioner was not entitled to a jury instruction on the defense of necessity. *Id.* at 20.

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). *See also Crane v. Kentucky*, 476 U.S. 683, 687- 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972). The constitutional right to present a defense, however, is not absolute. *Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983). Thus,

> [w]here evidence has been excluded pursuant to a state evidentiary law, we use a balancing test: In weighing the importance of evidence offered by a defendant against the state's interest in exclusion, the court should consider the probative value of the evidence on the central issue; its reliability; whether it is capable

9

> of evaluation by the trier of fact; whether it is the sole evidence on
> the issue or merely cumulative; and whether it constitutes a major
> part of the attempted defense. A court must also consider the
> purpose of the [evidentiary] rule; its importance; how well the rule
> implements its purpose; and how well the purpose applies to the
> case at hand. The court must give due weight to the substantial
> state interest in preserving orderly trials, in judicial efficiency, and
> in excluding unreliable or prejudicial evidence.

*Alcala*, 334 F.3d at 877 (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).  A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  *See also Crane*, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002).

   Petitioner was not entitled to argue the defense of necessity because petitioner's actions did not conform to the requirement that the alleged act be supported by public policy.  The petitioner has failed to demonstrate a violation of a decision by the United States Supreme Court or an unreasonable application of the facts in issue.  The exclusion of the evidence was not "arbitrary or disproportionate" nor did it infringe upon a weighty interest.

### B

   Petitioner also maintains that evidence of euthanasia was necessary for cross examination purposes.  During testimony at petitioner's trial, an animal control officer became emotional while describing the death of one of the cats found in the trailer. Answer, Ex. D at 19-20.  Petitioner's attempt to cross examine the witness regarding his emotional response to euthanasia was denied.  *Id.* at 20.  On appeal, petitioner claimed this denial inhibited her right to cross examine the witness.  *Id.*  The California Court of Appeal found that "[e]vidence of euthanasia to impeach the officer's credibility was so tangential to the issues legally involved in this case that we cannot say the trial court abused its discretion.  The exclusion of evidence

concerning euthanasia was well within the trial court's authority." *Id*. at 21.

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision, or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-920 (9th Cir. 1991). A federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986). *See also Mancuso v. Olivarez*, 292 F. 3d 939, 956 (2002) (a writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)). In order to grant relief, the habeas court must find that the error had "'a substantial and injurious effect' on the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

The proposed use of the evidence was tangential to the issues presented in the case. While the animal control officer's testimony may have been key to the state's case, impeachment or testimony concerning his feelings regarding euthanasia would not have disputed the allegations that petitioner confined 92 cats, many of which were diseased, to a small trailer. Given the limited probative value and relevance of any potential impeachment testimony, the trial court's refusal to admit the evidence cannot be deemed arbitrary or so prejudicial that it rendered the trial fundamentally unfair.

**V**

**A**

Petitioner claims that the California Court of Appeal refused to allow petitioner to speak on the public policy issues present in her case. Petition at 5. The California Court of

Appeal denied petitioner's request for rehearing on the issue of public policy. Answer, Ex. F (California Court of Appeal rehearing denial).

Beyond the mere statement of this claim in her petition, no further evidence or authority has been presented to this court. Petitioner did not address this contention in her petition or in her traverse. Petition cites no law or authority on which the court is supposed to analyze this claim. Finally, petitioner has not demonstrated how the denial of her request for rehearing has impacted her case. Therefore, petitioner has failed to carry her burden of showing violation of federal law, or an unreasonable application of law to facts, regarding her ability to speak on public policy.

**B**

Petitioner argues that the information did not provide adequate notice of the theory of liability under which she was being charged, and did not provide notice "as to the nature of the accusations against her." Petition at 5. The California Court of Appeal held that the accusatory pleading provided petitioner with adequate notice of the charges pending against her. Answer, Ex. D at 8-10.

A criminal defendant enjoys a fundamental right under the Sixth Amendment to notice of the nature and cause of the charges filed in order to permit preparation of a defense. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."); *In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence...."); *Jackson v. Virginia,* 443 U.S. 307, 314 (1979) ("[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend."); *Gautt v. Lewis*, 489 F.3d 993, 1002 (9th Cir. 2007) ("The

Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense."). The due process clause of the Fourteenth Amendment makes this right applicable to the states. *See Cole*, 333 U.S. at 201 ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").

A court must begin its analysis by looking at the content of the accusatory pleading to determine if a defendant has received adequate notice of the charges against him. *See Cole*, 333 U.S. at 198; *Gautt*, 489 F.3d at 1003 ("When determining whether a defendant has received fair notice of the charges against him, we begin by analyzing the content of the information."); *see also Lewis James v. Borg*, 24 F.3d 20, 24 (9th Cir.1994) (holding that to determine whether the defendant had adequate notice, "the court looks first to the information," the "principal purpose of [which] is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense") (citing *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir.1987)); *cf. Stirone*, 361 U.S. at 217 (stating that under the Fifth Amendment's right to a grand jury indictment, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him"). "[T]o satisfy the Sixth Amendment, 'an information [must] state the elements of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against.'" *Gautt*, 489 F.3d at 1003-1004 (citing *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir.1986); *Russell v. United States*, 369 U.S. 749, 763-64 (1962)). "An explicit citation to the precise statute at issue is best, but a 'brief factual recitation in the information' can also suffice." *Gautt* 489 F.3d at 1004 (quoting *Givens* 786 F.2d at 1381).

Petitioner was charged by way of felony complaint, which read . . .

13

> [o]n or about December 30, 1998, in the County of Placer, State of California, the crime of CRUELTY TO ANIMALS-TORTURE, TORMENT OR DEPRIVE, in violation of section 597(b) of the Penal Code, a felony, was committed by Suzanna Savedra Youngblood, who did willfully, unlawfully cause numerous animals, to wit, 92 cats, to be deprived of necessary sustenance and drink, and having charge and custody of said animals, did fail to provide those animals with proper food, drink and shelter, and did subject said animals to needless suffering.

Clerk's Transcript on Appeal volume 1 page 1.

The felony complaint thus provided both a citation to the precise statute at issue as well as a brief factual recitation. This allegation was sufficient to inform the petitioner of the nature and cause of the charges brought against her so as to allow preparation of a defense as required by the Sixth Amendment.

### C

Petitioner claims that the trial court erred when it refused to impose sanctions on the prosecution for its failure to preserve evidence. Petition at 6. The California Court of Appeal held that the animal control officers' failure to preserve some trash bags and feed bowls did not violate the officers' duty to preserve evidence that might be expected to play a significant role in the suspect's defense. Answer, Ex. D at 10-15.

Due process requires that the prosecution disclose exculpatory evidence within its possession. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The failure to preserve evidence violates a defendant's right to due process only, however, if that evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489; *Cooper v. Calderon*, 255 F.3d 1104, 1113 (9th Cir. 2001). A defendant must also demonstrate that the police acted in bad faith in failing to preserve potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Cooper*, 255 F.3d at 1113; *see also Guam v. Muna*, 999 F.2d 397, 400 (9th Cir. 1993). The presence or

absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed.  *Youngblood*, 488 U.S. at 56-57 n.*; *see also United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993).

The exculpatory value, if any, of the evidence at issue here was minimal.  The presence of feed bowls inside the trailer was not in contention.  The evidence of petitioner's guilt was based on the excessive number of cats confined to a small enclosure, their diseased and filthy condition, and the condition of the trailer.  Evidence of unlimited food and water would not have refuted those facts.

Further, petitioner has made no showing that the officers acted in bad faith.

## CONCLUSION

IT IS HEREBY ORDERED that petitioner's petition for habeas corpus relief under § 2254 is denied.

DATED: August 28, 2007


/s/ Arthur Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation